IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MALIEK BLADE, <br><br> Plaintiff, <br><br> v. <br><br> THE MOREHOUSE SCHOOL OF MEDICINE, INC. <br><br> Defendant. | Civil Action No.: <br><br> _____ |

## COMPLAINT

Plaintiff Maliek Blade ("Mr. Blade") files this Complaint against The Morehouse School of Medicine, Inc. and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for: (1) unpaid overtime wages brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (the "FLSA"); (2) breach of contract, or, in the alternative, quantum meruit brought under Georgia law; and (3) retaliation motivated by Plaintiff's complaints of sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. (Title VII).

2. Defendant willfully failed to appropriately compensate Plaintiff for all overtime hours worked in violation of the FLSA. Plaintiff was misclassified as a salaried, overtime exempt employee and was not paid at an appropriate overtime rate

for the hours over 40 he worked per week.

3. Defendant breached the terms of the employment agreement between Plaintiff and Defendant by failing to provide agreed upon benefits and compensation to Plaintiff, or, in the alternative, failed to pay him quantum meruit for the work he performed.

4. Pursuant to O.C.G.A. § 13-6-11, Plaintiff is entitled to an award of his attorneys' fees and expenses of litigation as a part of his damages for Defendant's breach because Defendant has acted in bad faith and has caused Plaintiff unnecessary trouble and expense by breaching the terms of the employment agreement.

5. Defendant violated Title VII's anti-retaliation provisions when Plaintiff supervisor, Walter Conwell, engaged in a pattern of retaliation against Plaintiff after Plaintiff reported being the victim of sexual harassment perpetrated by a subordinate of Conwell's. Defendant further retaliated against Plaintiff by terminating him when he complained of Conwell's retaliatory conduct.

**PARTIES, JURISDICTION AND VENUE**

6. Defendant is a Georgia Domestic Nonprofit Corporation with its principal office located at 720 Westview Drive SW, Atlanta, Georgia 30310.

7. Defendant may be served through its registered agent Michael A. Rambert at 720 Westview Drive SW, Atlanta, Georgia 30310.

8. Plaintiff is an individual resident of Fulton County, Georgia.

9. Under 28 U.S.C. § 1331 this Court has jurisdiction over Plaintiff's claims under the FLSA and Title VII because the claims raise questions of federal law.

10. Under 28 U.S.C. § 1367 this Court has jurisdiction over Plaintiff's claims under Georgia law because they arise out of the same nucleus of operative fact and form part of the same case or controversy as Plaintiff's claims arising under federal law.

11. This Court has personal jurisdiction over Defendant because Defendant is registered to do business in this state and maintains a registered agent in this state.

12. Under 28 U.S.C. § 1391(b) and Local Rule 3.1(B), venue is proper in this division because Defendant resides in this division or a substantial part of the events or omissions giving rise to the claims occurred in this division.

**FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S FLSA CLAIM**

13. Defendant is a private medical school in Atlanta, Georgia.

14. Defendant is an enterprise engaged in commerce or in the production of goods for commerce.

15. During the time Plaintiff was employed by Defendant, Defendant had two or more "employees handling, selling, or otherwise working on goods or

materials that have been moved in or produced for commerce by any person."

16. Defendant employs two or more individuals who regularly communicate across state lines using the interstate mail, interstate, and telephone while performing their job duties.

17. Defendant's employees handle and use material that were manufactured outside the state of Georgia and traveled through interstate commerce, such as computers, computer software, medical equipment, paper supplies, printers, and copiers, while performing their job duties.

18. For the three years preceding the filing of this Complaint, Defendant's annual dollar volume of sales or business transactions exceeded $500,000.00 per year.

19. At all relevant times Defendant employed Plaintiff within the meaning of the FLSA.

20. Defendant hired Plaintiff to serve as its "Director of Diversity and Inclusion."

21. Defendant had the authority to hire and fire Plaintiff.

22. Defendant determined the employment policies applicable to Plaintiff.

23. Defendant had the authority to modify the employment policies applicable to Plaintiff.

24. Defendant determined how much, and in what manner Plaintiff was compensated.

25. Defendant maintains the employment records, such as time and payroll records, for Plaintiff.

26. Plaintiff was hired by Defendant for the position of "Director of Diversity and Inclusion."

27. Walter Conwell, Defendant's "Chief Diversity and Inclusion Officer," directly supervised Plaintiff.

28. Plaintiff's primary job duty was to assist students and student groups in hosting events that related to the cultures and demographics that made up the Morehouse School of Medicine's student body.

29. For example, Plaintiff gathered information from student leaders and faculty sponsors about the school's culture and demographics.

30. Plaintiff spoke with and assisted student leaders and faculty sponsors in putting on events related to student diversity.

31. Although Plaintiff assisted students and student groups in putting on these events, student groups and their faculty sponsors were primarily responsible for planning and hosting the events.

32. Plaintiff operated under Conwell's direct supervision in performing his

job duties.

33. Conwell consistently issued specific instructions to Plaintiff directing Plaintiff in the performance of his job duties.

34. Conwell was responsible for setting policies and procedures related to Diversity and Inclusion.

35. Conwell set the budgets for student diversity events at the Morehouse School of Medicine.

36. Conwell controlled the schedule of when student diversity events would occur at the Morehouse school of Medicine.

37. In performing his job duties, Plaintiff followed policies and procedures established by Conwell and other supervisors employed by Defendant.

38. For example, Plaintiff was required to obtain Conwell's explicit approval before he could spend or approve the expenditure of significant amounts of Defendant's funds.

39. Plaintiff worked alongside Conwell's administrative assistant, Qiana Felder and a Morehouse School of Medicine program coordinator, Tawain Kelly.

40. Conwell required Plaintiff, Felder, and Kelly to get his approval on plans for student events.

41. Conwell frequently deferred to Felder's recommendations for student

diversity events rather than Plaintiff's.

42. For example, when Plaintiff proposed a certain color scheme for an event, Conwell rejected Plaintiff's proposal and directed him to use a color scheme proposed by Felder.

43. Plaintiff typically worked more than 40 hours per week.

44. Because of the nature of his work, Plaintiff often worked additional hours during the evening and on the weekends.

45. For example, Plaintiff was required to attend student events related to Diversity and Inclusion that occurred after hours.

46. Plaintiff was also frequently required to respond to communications and requests from Conwell and other Morehouse School of Medicine executives, which he received outside of his normal working hours.

47. Defendant failed to maintain complete and accurate records of the hours Plaintiff worked.

48. Defendant's failure to keep complete and accurate records of Plaintiff's hours worked violated the FLSA's recordkeeping requirement.

49. Defendant paid Plaintiff a fixed annual salary that was issued on a bi-weekly basis.

50. Defendant failed to pay Plaintiff for all hours worked over 40 per

workweek.

51. Defendant knew or should have known that Plaintiff worked uncompensated overtime hours while employed by Defendant.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S BREACH OF CONTRACT CLAIM

52. Plaintiff entered into a contract for employment with Defendant.

53. As a term of the contract for Plaintiff's employment, Defendant agreed to pay Plaintiff a fixed salary paid on a bi-weekly basis.

54. Defendant did not pay Plaintiff his final paycheck following his termination.

55. Plaintiff worked his full schedule until his termination on September 15, 2023.

56. The final paycheck received by Plaintiff was for the pay period ending on September 8, 2023.

57. Following his termination, Plaintiff requested his final paycheck by contacting Marla Thompson, Defendant's HR Director.

58. Plaintiff never received a response from Defendant.

59. Plaintiff received no compensation from Defendant for the hours he worked during the period from September 9 to September 15, 2023.

60. Defendant knowingly failed to pay Plaintiff in accordance with the

terms of his contract for employment.

61. By knowingly failing to pay Plaintiff his final paycheck, Defendant breached the contract for employment between Plaintiff and Defendant.

62. By knowingly failing to pay Plaintiff his final paycheck, Defendant has acted in bad faith and has caused Plaintiff unnecessary trouble and expense.

63. Additionally, by failing to pay Plaintiff for the hours worked during the period from September 9 to September 15, 2023, Defendant failed to pay Plaintiff for the hours worked in that week on a salary basis.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S RETALIATION CLAIM

64. Defendant is a person or entity in an industry affecting commerce.

65. Defendant has continuously had fifteen or more employees, as defined by 42 U.S.C. § 2000e(f) for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

66. Plaintiff was an employee of Defendant's as that term is defined by 42 U.S.C. § 2000e(f).

67. Defendant's sexual harassment policy defines sexual harassment to include making unwelcome sexual comments about a person's sexual experiences.

68. During Plaintiff's employment with Defendant, Qiana Felder, Conwell's administrative assistant, told Plaintiff she was having a sexual and

romantic relationship with Conwell and another executive at the Morehouse School of Medicine, David Hefner.

69. Felder frequently described her sexual relationships, including with Hefner and Conwell, to Plaintiff.

70. Felder often used graphic and explicit language to describe her sexual relationships to Plaintiff.

71. Felder also showed Plaintiff sexually suggestive or explicit photos.

72. For example, on one occasion, Felder showed Plaintiff a photograph of Felder and Hefner in their underwear together.

73. Plaintiff stated to Felder on multiple occasions that her descriptions of her sexual relationships, particularly those with other Morehouse employees, made Plaintiff uncomfortable.

74. Despite Plaintiff's statements to Felder, she continued to describe her sexual experiences to him.

75. In February of 2023, Plaintiff reported Felder to Defendant's Human Resources Department by emailing and verbally submitting complaints to Defendant's HR Director, Marla Thompson, and Defendant's General Counsel, Rachel Samuda.

76. After Plaintiff's report, Conwell began retaliating against Plaintiff for

reporting Felder's sexually harassing conduct.

77. For example, following Plaintiff's reports to Human Resources, Conwell informed Felder that Plaintiff had submitted HR reports against her, despite Plaintiff's reports to Human Resources being confidential.

78. Following Conwell divulging to Felder Plaintiff had made HR reports against her, Felder verbally assaulted Plaintiff during an in-person staff meeting.

79. Although Conwell was present during Felder's verbal assault and was Felder's direct supervisor, he did not intervene or discipline Felder.

80. Shortly after Plaintiff's reports, Felder was terminated.

81. After Felder's termination, Conwell's retaliatory conduct continued.

82. Conwell closed Plaintiff's office and forced him to work from home, while other employees were permitted and encouraged to work on a hybrid schedule.

83. In June of 2023, Plaintiff filed another HR complaint against Conwell regarding his continued retaliatory behavior.

84. In June of 2023, Plaintiff met with Marla Thompson and Defendant's President, Valerie Montgomery-Rice.

85. During the June meeting, Plaintiff stated to Thompson and Montgomery-Rice that Conwell was engaging in a sustained campaign of retaliation against him.

86. Plaintiff stated he believed Conwell was retaliating against him because Plaintiff's disclosure of Felder's sexually harassing behavior had implicated Conwell in a workplace affair, as well as because of Plaintiff's continued complaints against Conwell.

87. Defendant took no action to address Conwell's conduct.

88. Instead, Defendant recommended that Plaintiff and Conwell attend a professionalism workshop.

89. No professionalism workshop ever occurred.

90. On September 15, 2023, Plaintiff met with Montgomery-Rice and Thompson again and reiterated his complaints about Conwell.

91. Plaintiff also stated on September 15, 2023, that he believed Conwell was attempting to push Plaintiff to resign.

92. Plaintiff was terminated by Thompson later that day on September 15, 2023.

93. Mr. Blade timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 13, 2023.

94. The EEOC issued Plaintiff's Notice of Right to Sue on March 27, 2024. A true and correct copy of the Notice of Right to Sue is attached as **Exhibit 1**.

95. Plaintiff has exhausted his administrative remedies under Title VII.

96. All conditions precedent to Plaintiff filing this lawsuit pursuant to Title VII have been met.

### COUNT 1: FAILURE TO PAY PLAINTIFF OVERTIME WAGES IN VIOLATION OF THE FLSA

97. For the duration of his employment, Plaintiff was entitled to be paid an overtime rate of 1.5 times his regular rate of pay for all hours he worked over 40 hours per week.

98. Plaintiff regularly worked more than 40 hours per week.

99. Defendant failed to pay Plaintiff an overtime rate of 1.5 times his regular rate of pay for the hours over 40 per week Plaintiff worked.

100. Additionally, by failing to pay Plaintiff for the hours worked during the period from September 9 to September 15, 2023, Defendant failed to pay Plaintiff on a salary basis for the hours worked in that week.

101. Defendant did not pay Plaintiff on a salary basis for all hours worked per week in every week of Plaintiff's employment.

102. Defendant failed to keep accurate records of the hours worked by Plaintiff.

103. Defendant's failure to pay Plaintiff 1.5 times his regular rate of pay for all hours worked over 40 per week was a willful violation of the FLSA.

104. Plaintiff is entitled to all unpaid overtime wages from a period

extending to three years prior to the date this complaint is filed, an amount equal to his unpaid overtime wages in liquidated damages, and attorneys' fees and costs of litigation.

### COUNT 2: BREACH OF CONTRACT IN VIOLATION OF GEORGIA LAW, OR IN THE ALTERNATIVE QUANTUM MERUIT

105. Plaintiff entered into a valid, binding contract for employment with Defendant.

106. Defendant promised to pay Plaintiff a fixed salary paid on a bi-weekly basis.

107. Defendant did not provide Plaintiff with his final paycheck following his termination.

108. Plaintiff notified Defendant that he had not received his final paycheck and requested that his final paycheck be issued to him.

109. Defendant did not respond to Plaintiff's request for his final paycheck.

110. By failing to pay Plaintiff his final paycheck, Defendant failed to pay Plaintiff in accordance with the terms of his contract.

111. By failing to pay Plaintiff his final paycheck, Defendant breached the employment contract.

112. In the alternative, Plaintiff performed services valuable to Defendant

when he worked for Defendant in the period from September 9 to September 15, 2023.

113. Defendant requested Plaintiff perform the services rendered.

114. Plaintiff reasonably expected to be equitably compensated at the time he rendered the services to Defendant.

115. Defendant did not equitably compensate Plaintiff for the services rendered.

116. Defendant's compensation for the services rendered by Plaintiff was so inequitable as to be unjust.

117. Defendant's breach of contract, or in the alternative, failure to provide quantum meruit to Plaintiff damaged Plaintiff in an amount to be proven at trial.

### COUNT 3: ATTORNEYS' FEES AND EXPENSES OF LITIGATION PURSUANT TO O.C.G.A. § 13-6-11

118. Defendant has refused to honor its obligations as set forth in its contract with Plaintiff without a legal or factual basis.

119. Defendant's breach of the contract was knowing and willful.

120. Defendant has acted in bad faith and has caused Plaintiff unnecessary trouble and expense.

121. Pursuant to O.C.G.A. § 13-6-11, Plaintiff is entitled to an award of his attorneys' fees and expenses of litigation to be included as a part of his damages for

Defendant's breach.

## COUNT 3: RETALIATION IN VIOLATION OF TITLE VII

122. Plaintiff was subjected to sexual harassment by Felder.

123. Plaintiff reported Felder's sexual harassment to Defendant.

124. Plaintiff had a reasonable good faith belief that he was being sexually harassed when he reported Felder's sexual harassment.

125. Plaintiff engaged in activity protected by Title VII when he reported Felder's sexual harassment.

126. Following Plaintiff's report of Felder's sexual harassment, Plaintiff's supervisor, Conwell, began a campaign of retaliation against Plaintiff.

127. Plaintiff made multiple reports regarding Conwell's retaliatory behavior against him, including reports to Defendant's HR Director, General Counsel, and President.

128. Despite Plaintiff's reports, Defendant took no action to prevent or stop Conwell's retaliatory behavior.

129. Plaintiff reiterated his complaints about Conwell's behavior and Defendant's failure to address it to Defendant's HR Director and President on September 15, 2023.

130. Plaintiff engaged in protected activity when he complained of

Conwell's retaliatory behavior to Defendant on September 15, 2023.

131. Plaintiff was terminated on September 15, 2023, shortly after his complaints to Defendant's HR Director and President.

132. Plaintiff suffered an adverse employment action when he was terminated.

133. The temporal proximity between Plaintiff's protected activity and his termination indicate that Plaintiff's termination was related to his protected activity.

134. A causal connection exists between Plaintiff's protected activity and Plaintiff's termination.

135. Defendant's unlawful and discriminatory conduct was willful and intentional, with a reckless indifference to Plaintiff's federally protected rights.

136. As a result of Defendant's conduct, Plaintiff has suffered monetary damages in the form of lost wages, employment benefits, and opportunities for advancement.

137. As a result of Defendant's conduct, Plaintiff has suffered additional monetary and non-monetary damages, such as fear and anxiety due to the loss of his employment, as well as damage to his professional reputation.

**DEMAND FOR JUDGMENT**

Plaintiff respectfully requests that the Court:

(1) Enter judgment that Defendant violated Plaintiff's rights under the FLSA;

(2) Enter judgment that Defendant's violations of Plaintiff's rights under the FLSA were willful;

(3) Award Plaintiff all unpaid overtime wages for a period up to three years prior to the date this complaint is filed and liquidated damages in an amount equal to his unpaid wages;

(4) Enter judgment that Defendant breached the employment contract between Plaintiff and Defendant, or, in the alternative, failed to pay Plaintiff quantum meruit.

(5) Award Plaintiff actual and compensatory damages arising from Defendant's breach, or in the alternative, failure to pay Plaintiff quantum meruit.

(6) Pursuant to O.C.G.A. § 13-6-11, award Plaintiff his attorneys' fees and expenses of litigation arising from Defendant's breach

(7) Enter judgment that Defendant terminated Plaintiff in retaliation for engaging in activity protected under Title VII.

(8) Award Plaintiff actual, compensatory, and punitive damages arising from Defendant's retaliatory conduct.

(9) Award Plaintiff his reasonable attorney's fees, costs, and expenses; and

(10)  Award all other relief to which Plaintiff may be entitled.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests a trial by jury under Fed. R. Civ. P. 38.

Respectfully submitted:  Wednesday, April 24, 2024.

|  |  |
|---|---|
| **PARKS, CHESIN & WALBERT, P.C.** | *s/John L. Mays* |
| 1355 Peachtree Street NE, Suite 2000 | John L. Mays |
| Atlanta, GA 30309 | Georgia Bar No. 986574 |
| (404) 873-8000 | Evan Drew |
| jmays@pcwlawfirm.com | Georgia Bar No. 747996 |
| edrew@pcwlawfirm.com | |
| | *Counsel for Plaintiff* |